UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

WILLIAM H. PAYTON,

        Plaintiff,

    v.                        Civil Action 2:25-cv-114
                                 Judge Michael H. Watson
                                 Magistrate Judge Chelsey M. Vascura

KEN ROE, *et al.*,

        Defendants.

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, William H. Payton, a state inmate proceeding without the assistance of counsel, sues several employees of Ohio Penal Industries ("OPI"), an agency of the Ohio Department of Rehabilitation and Correction ("ODRC"), under 42 U.S.C. § 1983, alleging that Defendants fostered a hostile work environment and were deliberately indifferent to Plaintiff's serious health, safety, and medical needs. (Compl., ECF No. 1.) This matter is before the Court for the initial screen of Plaintiff's Complaint under 28 U.S.C. § 1915A to identify cognizable claims and to recommend dismissal of Plaintiff's Complaint, or any portion of it, which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Having performed the initial screen, Plaintiff **MAY PROCEED** on his individual-capacity claims for compensatory and punitive damages against all Defendants for failure to protect Plaintiff against assault by another inmate, and his official-capacity claims against Defendants Bierbaugh and Arledge for injunctive relief requiring

reinstatement (maintaining his current levels of paygrade, longevity, incentives, and personal and sick leave) and prevention of harassment or retaliation against Plaintiff. But the undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's remaining claims for failure to state a claim on which relief may be granted.

It is further **RECOMMENDED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF No. 4) be **DENIED**. Plaintiff's motions for U.S. Marshals to personally serve Defendants (ECF No. 5) and for appointment of counsel (ECF No. 6) are **DENIED**.

## I.     BACKGROUND

Plaintiff alleges that in 2022, he settled claims against two OPI employees arising out of Plaintiff's reassignment away from his prison job at OPI's Meat Processing Career Center ("MPCC") on an allegedly discriminatory basis. As part of that settlement, Plaintiff was to be reinstated to his position at the MPCC. However, Plaintiff was instead assigned to a job at OPI's Print Shop, supervised by Defendant Ken Roe. Before Plaintiff began work at the Print Shop, Roe met with the other Print Shop employees and told them about Plaintiff's return to work because of his legal settlement, Plaintiff's pay grade of "7" (which was higher than that of most other inmates, and higher than what an inmate in Plaintiff's Print Shop position would typically earn), Plaintiff's retention of his prior longevity, sick leave, and personal leave, and Plaintiff's monetary settlement. (Compl. ¶¶ 25–30, ECF No. 1.)

The other inmates' knowledge of Plaintiff's settlement and favorable employment terms created hostility toward Plaintiff. Over the next two and a half years, Plaintiff faced near-daily harassment and threats of physical violence. Plaintiff was told by other inmates: "you better watch your back," "you're a white piece of shit," "fuck you and your lawsuit," "I'll beat your ass," "you're going to get knocked out," and "you're a white motherfucker." Over this 2.5-year period, Plaintiff repeatedly filed grievances about the other inmates' retaliation, hostile work

environment, racial harassment, and threats of physical violence. In particular, Plaintiff "often related these actions to Defendants Roe [Plaintiff's original supervisor at the Print Shop], Arledge [Plaintiff's subsequent supervisor at the Print Shop], and Bierbaugh [the regional director of OPI] . . . through proper channels without any resolution . . . ." In June 2023, Plaintiff sent a kite to Defendant Bierbaugh requesting to be reassigned to the MPCC as provided for in his 2022 settlement because of the hostile environment he faced from the other inmates at the Print Shop. Bierbaugh promised to have Plaintiff reassigned, but he never did. (*Id.* at ¶¶ 33, 56–57, 59–60.)

On June 20, 2024, Plaintiff was assaulted by another inmate named Strunk. Strunk attacked Plaintiff in a restroom, "throwing him into the wall and dividers, hitting his head, his ear bleeding and continuous migraines from a diagnosed concussion. During this time, the Plaintiff also had heart issues with his defibrillator going off twice and being sent on a trip to the OSU hospital from this tremendous stress." Just before the assault, Strunk was overheard saying to Plaintiff: "You snitch. I heard about you winning a lawsuit and your paygrade 7. Fuck you and this job . . . you snitch." (*Id.* at ¶¶ 40, 60, 68.)

After the assault, Plaintiff was not immediately given any medical treatment. But "almost immediately," Plaintiff "began to complain of debilitating headaches, dizziness, poor balance, lights flashing in his eyes and poor vision." He was then examined by a nurse and given Tylenol. In July 2024, Plaintiff was diagnosed with a concussion and migraines, which he had not experienced before the assault. In August 2024, Plaintiff was sent to a hospital for a CT scan. Since then, Plaintiff was occasionally treated with Tylenol, propranolol, shots of anti-inflammatory drugs and cortisone to help with the migraines. (*Id.* at ¶ 74.)

Plaintiff received a Rules Infraction Board ("RIB") ticket for fighting because of the assault by Strunk. Plaintiff was found guilty and his security level was raised from 1 to 2. (*Id.* at ¶ 75.)

The undersigned construes Plaintiff's Complaint to advance claims for (1) allowing a hostile work environment under Title VII of the Civil Rights Act of 1964, (2) denying participation in a public program under the Americans with Disabilities Act, (3) failure to protect Plaintiff from assault by Strunk under the Eighth Amendment; (4) deliberate indifference to serious medical needs under the Eighth Amendment, and (5) deprivation of liberty without due process of law under the Fourteenth Amendment. Plaintiff sues all Defendants in both their individual and official capacities, though he specifies that he seeks damages from Defendants only in their individual capacities and seeks declaratory and injunctive relief against Defendants only in their official capacities. (*Id.* at ¶ 4.)

## II.     STANDARD OF REVIEW

To state a claim upon which relief may be granted, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *See also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (applying Federal Rule of Civil Procedure 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, Rule 8(a) "imposes legal and factual demands on the authors of complaints." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Although this pleading standard does not require "detailed factual allegations, a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A complaint will not

"suffice if it tenders naked assertion devoid of further factual enhancement." *Id.* (cleaned up).
Instead, to state a claim upon which relief may be granted, "a complaint must contain sufficient
factual matter to state a claim to relief that is plausible on its face." *Id*. (cleaned up). Facial
plausibility is established "when the plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The
plausibility of an inference depends on a host of considerations, including common sense and the
strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504
(citations omitted). Further, when considering a *pro se* plaintiff's Complaint, a Court "must read
[the allegations] with less stringency . . . and accept the pro se plaintiff's allegations as true,
unless they are clearly irrational or wholly incredible." *Reynosa v. Schultz*, 282 F. App'x 386,
389 (6th Cir. 2008) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)) (internal citation
omitted).

### III.  ANALYSIS

Having performed the initial screen under § 1915A(b), Plaintiff may proceed on his
individual-capacity Eighth Amendment failure-to-protect claim arising out of Strunk's assault on
Plaintiff against Defendants Roe, Arledge, and Bierbaugh for compensatory and punitive
damages and his official-capacity claims against Defendants Bierbaugh and Arledge for
injunctive relief requiring reinstatement (maintaining his current levels of paygrade, longevity,
incentives, and personal and sick leave) and prevention of harassment or retaliation against
Plaintiff. But Plaintiff's remaining claims must be dismissed.

### A.  Plaintiff has not stated a claim for hostile work environment under Title VII.

Plaintiff alleges that Defendants fostered a hostile work environment constituting
discrimination on the basis of race, as Plaintiff was subject to constant verbal harassment,
including many derogatory remarks referring to his race. Typically, a hostile work environment

arising out of racial discrimination is actionable under Title VII of the Civil Rights Act of 1964.

But the Equal Employment Opportunity Commission has determined that Title VII does not

apply to inmates working a prison job, as the relationship between inmates and the prison agency

that employs them is not truly one of employment:

> That relationship [between the Charging Party inmate and the Respondent state correctional facility in which he was incarcerated] arose from the Charging Party's having been convicted and sentenced to imprisonment in the Respondent's correctional institution. The primary purpose of their association was incarceration, not employment. Consequently, the Respondent exercised control and direction not only over the Charging Party's work performance but over the Charging Party himself. The conditions under which he performed his job were, thus, functions of his confinement to the Respondent's institution under its control. While the Charging Party received monetary compensation for his work, that compensation was minimal and, arguably, the greater consideration was the opportunity to earn "good time" credits toward reducing his sentence. Finally, although the Charging Party was not required to work for the Respondent, his very job flowed from his incarceration and was dependent on his status as a prison inmate. Considering these circumstances as a whole, we are persuaded that the reality of the work relationship between the Respondent and the Charging Party was not one of employment. Therefore, we find that, while the Respondent is an employer within the meaning of the Act, the Charging Party was not an employee of the Respondent.

EEOC Dec. No. 86-7 (1986), 1986 WL 38836, at *3. Courts have cited this guidance numerous

times to hold that prisoners, like Plaintiff, do not hold viable claims for employment

discrimination under Title VII. *See*, *e.g.*, *Lacey v. Ohio Dep't of Rehab. & Corr.*, No. 18 CV

2006, 2019 WL 233619, at *2 (N.D. Ohio Jan. 16, 2019) ("An inmate working in a correctional

institution does not have an employment relationship with the correctional institution for

purposes of Title VII."); *Gooding v. United States*, No. 3:09-CV-23, 2010 WL 925793, at *3–4

(E.D. Tenn. Mar. 9, 2010) ("[P]laintiff was not an employee of the [Bureau of Prisons] for

purposes of Title VII."); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) ("[P]laintiff is

not an 'employee' under either Title VII or the ADEA because his relationship with the Bureau

of Prisons, and therefore, with the defendants, arises out of his status as an inmate, not an

employee."). Because Plaintiff's relationship with OPI arose out of his status as an inmate, not as

an employee, he fails to state a claim for employment discrimination under Title VII. Accordingly, to the extent that Plaintiff advances a claim for hostile work environment under Title VII, it is **RECOMMENDED** that such claim be **DISMISSED**.

**B.      Plaintiff has not stated a claim for denial of participation in a public program under Title II of the ADA.**

Plaintiff also refers to a hostile work environment on the basis of his disability (heart disease). Plaintiff asserts that the harassment and threats by other inmates deprived him of participation in the work program offered by OPI in violation of Title II of the Americans with Disabilities Act ("ADA"). Although Title II of the ADA does apply to prisoners, *Key v. Grayson*, 179 F.3d 996, 997 (6th Cir. 1999) (citing *Pennsylvania Dep't of Corrections v. Yeskey,* 524 U.S. 206, 212–13 (1998)), Plaintiff must allege that he was, "by reason of [his] disability, [ ] excluded from participation in or [ ] denied the benefits of the services, programs, or activities of a public entity, or [ ] subjected to discrimination by any such entity." 42 U.S.C. § 12132. Although Plaintiff alleges that the harassment and threats exacerbated his heart condition, Plaintiff does not allege that any inmate harassed or threatened him, or that Defendants refused to act on the harassment or threats, *because of* his disability. Nor does Plaintiff allege that he was denied participation OPI's work program. Although Plaintiff alleges that the harassment made it more difficult to do his job, he nevertheless "worked as he always had: efficiently, proudly and without complaint about his position." (Compl. ¶ 36, 48.) Plaintiff also retained his elevated pay grade, longevity, and personal and sick leave balances. Thus, to the extent that Plaintiff advances a claim for denial of participation in or benefits from a public program under the ADA, it is **RECOMMENDED** that such claim be **DISMISSED**.

**C.      Plaintiff has not stated a claim for deliberate indifference to his serious medical needs following the assault by Strunk.**

Plaintiff alleges that he received inadequate medical care after he was assaulted by

Strunk. The Sixth Circuit has noted that in the context of deliberate indifference claims:

> "[W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Where a prisoner alleges only that the medical care he received was inadequate, "federal courts are generally reluctant to second guess medical judgments." *Id.* However, it is possible for medical treatment to be "so woefully inadequate as to amount to no treatment at all." *Id.*

*Alspaugh*, 643 F.3d at 169. *See also Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) ("If

the plaintiff's claim, however, is based on the prison's failure to treat a condition adequately . . .

the plaintiff must place verifying medical evidence in the record to establish the detrimental

effect of the delay in medical treatment." (internal quotation marks and citation omitted)).

Moreover, "when a prison doctor provides treatment, albeit carelessly or inefficaciously, to a

prisoner, he has not displayed a deliberate indifference to the prisoner's needs, but merely a

degree of incompetence which does not rise to the level of a constitutional violation." *Id.* at 591.

(quotation marks and citation omitted). Here, Plaintiff has, at most, alleged that his medical care

was inadequate, not nonexistent. His health needs were not ignored; when he complained

"almost immediately" after the assault of headaches, dizziness, poor balance, lights flashing in

his eyes and poor vision, he was examined by a nurse and given Tylenol. He was later diagnosed

with a concussion and migraines, underwent a CT scan, and was further treated with Tylenol,

propranolol, shots of anti-inflammatory drugs and cortisone to help with the migraines. (Compl.

¶ 74, ECF No. 1.) This treatment demonstrates that Defendants were not deliberately indifferent

to Plaintiff's serious medical needs and his medical indifference claim must therefore be

dismissed.

**D.**     **Plaintiff has not stated a Fourteenth Amendment procedural due process claim arising out of his increased security level.**

Plaintiff has also failed to plausibly allege a due process claim. More specifically, Plaintiff's allegations cannot implicate federal due process concerns because he has not alleged that his assignment to an increased security level amounted to a deprivation of a constitutionally protected liberty interest. "[T]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "An inmate establishes a liberty interest when a change in conditions of confinement 'imposes atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Williams v. Lindamood*, 526 F. App'x 559, 562 (6th Cir. 2013) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "[A]n increase in security classification . . . does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification." *Harbin–Bey*, 420 F.3d at 577 (internal quotation marks and citation omitted); *see also Moody v. Daggett*, 429 U.S. 79, 88 n.9 (1976) (change in "prisoner classification" does not implicate a due process right); *Harris v. Truesdell*, 79 F. App'x 756, 759 (6th Cir. 2003) (holding that neither "punishment of more than 60 days of punitive segregation" nor a change in security classification "give rise to a protected Fourteenth Amendment Liberty interest"); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003) (holding that inmate's placement in disciplinary confinement or a change in security classification or housing assignment did not implicate the Due Process Clause).

Here, Plaintiff has not alleged that his increased security level resulted in any atypical and significant hardship in relation to the ordinary incidents of prison life. Because Plaintiff does

9

not have a constitutional right to a particular security level, it is **RECOMMENDED** that Plaintiff's Fourteenth Amendment due process claim be **DISMISSED.**

**E.     Plaintiff's claims for injunctive relief against Defendant Roe must be dismissed.**

        In connection with his failure-to-protect claim against Defendants Roe, Bierbaugh, and Arledge arising out their deliberate indifference to the serious risk to Plaintiff's safety and culminating in the assault on Plaintiff by Strunk, Plaintiff seeks the following injunctive relief: "[t]hat the Plaintiff be reinstated to the position of Bindery in the Print Shop or to the MPCC (as originally agreed upon in the previous settlement and promised by Defendant Bierbaugh in 2023), with all longevity, incentives, personal and sick leave and a paygrade of 7," and that "[t]he Plaintiff no longer be retaliated or discriminated against by staff or workers of the [Print Shop], MPCC, OPI, [Pickaway Correctional Institution,] or ODRC." (Compl. ¶ 86, ECF No. 1.) Reinstatement is appropriate prospective relief from Bierbaugh in his official capacity as the regional director of OPI, and Bierbaugh and Arledge (the current Print Shop supervisor) would both be appropriate officials to prevent further retaliation and harassment against Plaintiff. Defendant Roe, however, no longer works at the Print Shop or at Pickaway Correctional Institution where Plaintiff is housed; Plaintiff alleges that Roe now works with OPI at Chillicothe Correctional Institution. (*Id.* at ¶ 8.) As Plaintiff's allegations do not suggest any ability of Roe to oversee Plaintiff's working conditions *in the future*, Plaintiff's claims for injunctive relief against Roe must be dismissed. *See Ex parte Young*, 209 U.S. 123, 157 (1908) (defendant in action for injunctive relief against a state official "must have some connection" to the unconstitutional actions to be enjoined); *Kanuszewski v. Michigan Dep't of Health & Hum. Servs.*, 927 F.3d 396, 406 (6th Cir. 2019) (injunctive relief available only to prevent future harms, not to remedy past harms).

F.      **Miscellaneous Motions**

Although Plaintiff paid the filing fee when he commenced this action, Plaintiff also moves for leave to proceed *in forma pauperis* for purposes of having the U.S. Marshal complete service on Defendants. (ECF No. 4.) Plaintiff's certified trust fund account statement accompanying his application indicates that he currently has $4,703.32 in his prison trust fund account and that his average monthly deposits for the last six months were in the amount of $41.96. (*Id.*) Accordingly, Plaintiff has sufficient funds to pay the costs of serving Defendants and it is **RECOMMENDED** that Plaintiff's Application to proceed *in forma pauperis* be **DENIED**. For the same reason, Plaintiff's motion for the U.S. Marshal to effect personal service on Defendants (ECF No. 5) is **DENIED**. *See* Fed. R. Civ. P. 4(c)(3) (service by U.S. Marshal is mandatory only if a plaintiff is authorized to proceed *in forma pauperis*). Plaintiff may, however, send requests for waivers of service directly to Defendants as provided for in Fed. R. Civ. P. 4(d). Alternatively, Plaintiff may submit the necessary service copies, envelopes, green cards, and postage to the Clerk of Court for certified mail service as provided for by S.D. Ohio Civ. R. 4.2.

Finally, Plaintiff moves for appointment of counsel because of the alleged complexity of his case. (ECF No. 6.) Appointment of counsel in a civil case is discretionary and is not a constitutional right. *See Lavado v. Keohane*, 992 F.2d 601, 605–06 (6th Cir. 1993). Rather, "[i]t is a privilege that is justified only by exceptional circumstances." *Id*. at 606. The Court has evaluated whether such exceptional circumstances exist and determines that the appointment of counsel is unwarranted at this juncture. Accordingly, Plaintiff's motion for appointment of counsel (ECF No. 6) is **DENIED**.

## IV.    DISPOSITION

Plaintiff **MAY PROCEED** on his individual-capacity claims for compensatory and punitive damages against all Defendants for failure to protect Plaintiff against assault by another inmate, and his official-capacity claims against Defendants Bierbaugh and Arledge for injunctive relief requiring reinstatement (maintaining his current levels of paygrade, longevity, incentives, and personal and sick leave) and prevention of harassment or retaliation against Plaintiff. It is **RECOMMENDED** that Plaintiff's remaining claims be dismissed for failure to state a claim upon which relief may be granted.

It is **RECOMMENDED** that Plaintiff's Application to proceed *in forma pauperis* (ECF No. 4) be **DENIED**.

Plaintiff's motion for the U.S. Marshal to effect personal service on Defendants (ECF No. 5) and motion for appointment of counsel (ECF No. 6) are **DENIED**.

Plaintiff is **ADVISED** that he is responsible for either (1) obtaining a waiver of service from each Defendant under Fed. R. Civ. P. 4(d), or (2) requesting the issuance of a summons for each Defendant and for serving each of the Defendants with a summons and a copy of the Complaint in compliance with Federal Rule of Civil Procedure 4(e).

## PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept,

reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE