# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

William H. Payton,

    Plaintiff,

    v.

Ken Roe, *et al.*,

    Defendants.

Case No. 2:25-cv-114

Judge Michael H. Watson

Magistrate Judge Vascura

## OPINION AND ORDER

William H. Payton ("Plaintiff"), a prisoner proceeding without the assistance of counsel, filed his Complaint and paid the filing fee in this case. ECF Nos. 1, 2. The Complaint alleged that Plaintiff is a white male inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC") who suffers from heart disease and requires the use of a defibrillator. *E.g.*, Compl. ¶¶ 7, 15, 28, ECF No. 1. At bottom, he argued that he previously sued Dave Dunn ("Dunn"), among others, resulting in a settlement. *Id.* ¶ 25. As part of the settlement, Plaintiff was to be reinstated to a paygrade 7 job with the Ohio Penal Industries ("OPI"). *Id.* ¶¶ 26–27. It is unclear whether the settlement provided for reinstatement to a job at the Meat Processing Career Center ("MPCC") or the Print Shop ("PS"),[1] but Plaintiff was eventually assigned to the PS. *Id.* ¶ 28.

---

[1] *See id.* ¶ 26 ("As part of the Settlement, the Plaintiff received his job back OPI [sic] and was Assigned to the PS . . . ."), ¶ 27 ("When the settlement was completed on or about January 7, 2022, the Plaintiff was to get back his position with MPCC . . . .").

Before Plaintiff's arrival at the PS, Ken Roe ("Roe"), the original supervisor at the PS, met with the other inmates working there and told them about Plaintiff's settlement. *Id.* ¶¶ 28–29. As a result of Roe's meeting, the other inmates at the PS created a hostile work environment for Plaintiff by constantly harassing him. *E.g.*, *id.* Plaintiff complained to Roe; Casey Arledge ("Arledge"), the subsequent supervisor at the PS; and William Bierbaugh ("Bierbaugh"), the regional manager for OPI. All three failed to remedy the hostile work environment. *E.g.*, *id.* ¶ 57. Plaintiff was eventually attacked by another inmate while at work. *Id.* ¶¶ 70–75. Based on these facts, Plaintiff sued Roe, Arledge, and Bierbaugh (collectively, "Defendants") in their official capacities for declaratory and injunctive relief and in their individual capacities for damages. *Id.* ¶¶ 1, 4.

The Magistrate Judge initially screened the Complaint, pursuant to 28 U.S.C. § 1915A, and Plaintiff's motion for leave to proceed *in forma pauperis* for the remainder of the litigation. She issued an Order and Report and Recommendation ("R&R"), permitting some claims to proceed but recommending that the Court dismiss others and deny Plaintiff's motion for leave to continue *in forma pauperis*. R&R, ECF No. 7.

Plaintiff objected, ECF No. 8, and then filed an Amended Complaint, ECF No. 9.

## II. STANDARDS OF REVIEW

With respect to the original Complaint, the Court should review "de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Moreover, Plaintiff's Amended Complaint is subject to an initial screen under 28 U.S.C. § 1915A(b). Pursuant to that statute, the Court "shall identify cognizable claims" and dismiss any portion of the Amended Complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or "seeks monetary relief from a defendant who is immune from such relief." *Id.*

Here, the Amended Complaint moots the original Complaint and would ordinarily also moot the R&R on the original Complaint and Plaintiff's objections to that R&R. Apart from clarifying that Bierbaugh is Manager 2 (as opposed to Regional Director) at OPI, replacing the phrase "hostile work environment" with "harassment," and making other minor changes, though, the Amended Complaint is virtually identical to the original Complaint. *E.g. compare* Am. Compl. ¶¶ 9, 22, 36, ECF No. 9, *with* Compl. ¶¶ 21, 34, ECF No. 1. Importantly, there are several new paragraphs in the Amended Complaint, but neither they nor the attached affidavit impacts the Magistrate Judge's analysis of the original Complaint. *See* Am. Compl. ¶¶ 61, 63(a), 64, ECF No. 9; Payton Aff., ECF No. 9-1. Therefore, the above standards of review merge in that the Court will consider only the

sufficiency of the Amended Complaint but will also consider the Magistrate

Judge's R&R and Plaintiff's objections thereto, to whatever extent they are

pertinent to the Amended Complaint.

## III. ANALYSIS

The R&R construed the original Complaint as advancing

> claims for (1) allowing a hostile work environment under Title VII of
> the Civil Rights Act of 1964, (2) denying participation in a public
> program under the Americans with Disabilities Act, (3) failure to
> protect Plaintiff from assault by Strunk under the Eighth Amendment;
> (4) deliberate indifference to serious medical needs under the Eighth
> Amendment, and (5) deprivation of liberty without due process of law
> under the Fourteenth Amendment. Plaintiff sues all Defendants in
> both their individual and official capacities, though he specifies that he
> seeks damages from Defendants only in their individual capacities
> and seeks declaratory and injunctive relief against Defendants only in
> their official capacities.

R&R 4, ECF No. 7.

The R&R then permitted Plaintiff to proceed on his individual-capacity

damages claims against all Defendants for their alleged failure to protect Plaintiff

from Strunk's assault ((3) above). *Id.* at 1. It also permitted Plaintiff to seek

certain injunctive relief from Bierbaugh and Arledge. *Id.* at 1–2. But it

recommended denying claims (1), (2), (4), and (5) against all Defendants and

denying Plaintiff injunctive relief against Roe because Roe no longer works at

Plaintiff's place of confinement. *Id.* at 5–10. Finally, it recommended denying

Plaintiff's motion for leave to litigate the remainder of the case *in forma pauperis*

because Plaintiff has more than $4,000 in his inmate account. *Id.* at 7.

Plaintiff objects only to dismissal of the Americans with Disabilities Act ("ADA") claim.  Obj., ECF No. 8 ("The Plaintiff objects to the decision of this court concerning: Analysis B Denying participation in public program under America [sic] with Disabilities Act.").  Consistent with his limited objection, the Amended Complaint expressly disclaims claims (4) and (5).  Am. Compl., ECF No. 9 at PAGEID # 199 ("**The following is not a Due Process violation only point out what happened.**"), PAGEID # 200 ("**The following is not a Deliberate INDIFFERENCE to medical claim only shows injury.**") (emphases in original); Obj. 1, ECF No. 8 ("[H]e did not raise no medical issue of Deliberate Indifference he only pointed out injury.  Nor did he raise Due process Claim, he only pointed out again what happened.").

So, the Court does not construe the Amended Complaint as raising an Eighth Amendment deliberate indifference claim in connection with the medical treatment Plaintiff received after Strunk's attack or a Fourteenth Amendment Due Process claim based on Plaintiff's security level reclassification after the attack.  Alternatively, to the extent the Amended Complaint attempts to re-allege those claims, the allegations in the Amended Complaint concerning those claims are materially identical to the allegations in the original Complaint regarding those claims.  Plaintiff forfeited his right to de novo review of those claims by failing to object to the R&R's recommendation to dismiss the same.

Similarly, the Court construes Plaintiff's intentional replacement of the phrase "hostile work environment" (or "HWE") with "harassment" in the Amended

Complaint as a voluntary dismissal of the Title VII claim. Alternatively, if the Amended Complaint attempts to re-raise a Title VII claim, Plaintiff failed to object to the R&R's recommendation to dismiss that claim. Again, the Amended Complaint is not materially different from the original Complaint in any way that would affect this analysis.

Nor did Plaintiff object to the R&R's recommendation that the Court deny Plaintiff leave to litigate the remainder of this case *in forma pauperis* or deny injunctive relief against Roe because he now works at a different facility. The Amended Complaint does not cure either deficiency noted in the R&R, nor did Plaintiff object to either recommendation.

The Court thus now turns to Plaintiff's sole objection: whether he states a claim under the ADA.

Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II of the ADA applies to state prisoners. *Penn. Dept. of Corr. v. Yeskey*, 524 U.S. 206, 213 (1998). "Two types of claims are cognizable under ADA Title II: claims for intentional discrimination and claims for a reasonable accommodation." *Williamson v. Wheeler*, No. 22-4017, 2023 WL 5184714, at *2 (6th Cir. Aug. 9, 2023) (cleaned up). Plaintiff's Amended Complaint raises an intentional

discrimination claim.[2] *See, e.g.*, Am. Compl. ¶ 38(b), ECF No. 9 (addressing unwelcome harassment).

"An intentional discrimination claim lies where the defendant treated someone less favorably on account of his disability; proof of discriminatory motive is critical." *Knox Cty., Tenn. v. M.Q.*, 62 F.4th 978, 1000 (6th Cir. 2023) (cleaned up). So, where a plaintiff fails to allege facts showing the defendants denied the plaintiff benefits, deprived the plaintiff of a public service, or discriminated against the plaintiff because of a disability, he fails to state a Title II ADA discrimination claim.[3] *E.g.*, *Smith v. Dawdy*, No. 23-2043, 2024 WL 4925843, at *4 (6th Cir. Sept. 13, 2024).

---

[2] The Amended Complaint acknowledges that the PS position was meant to accommodate all work restrictions required by Plaintiff's heart disease. Am. Compl. ¶¶ 27, 38(a), 82, ECF No. 9. It nowhere alleges that Plaintiff could not perform any of the work, itself, because of his disability or that Plaintiff was denied a reasonable accommodation to help him perform the job. In fact, the affidavit attached to the Amended Complaint avers that, when Plaintiff was tasked with moving heavy paper, he requested and received assistance from porters. Payton Aff., ECF No. 9-1 at PAGEID # 217. The Court therefore does not construe the Amended Complaint as raising a failure-to-accommodate claim.

[3] Moreover, Title II "does not permit public employees or supervisors to be sued in their individual capacities[,]" *Williams v. McLemore*, 247 F. App'x 1, 8 (6th Cir. 2007), but it does sometimes abrogate states' sovereign immunity, *United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." (emphasis in original)). Because Plaintiff fails to allege that he was discriminated against due to his disability, though, there is no need to further define the scope of his Title II discrimination claim. *Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 673 (6th Cir. 2007) ("[W]e conclude that the Amended Complaint fails to state a claim under Title II of the ADA. In light of this determination, we need not reach the remaining prongs of the Georgia analysis.").

Here, Plaintiff adequately alleges he is an individual with a disability. Am. Compl. ¶ 16, ECF No. 9 ("The Plaintiff is a qualified individual with a recognized and recorded disability of heart disease (cardiovascular) with a defibrillator.").

But the Amended Complaint fails to allege that Plaintiff was "excluded from participation in or . . . denied the benefits of" his OPI job. Rather, the Amended Complaint suggests that Plaintiff continued to work at the PS and retained his pay grade, longevity, incentives, and personal and sick leave, despite being subjected to harassment during work. *See generally* Am. Compl., ECF No. 9.

Additionally, although the Amended Complaint certainly alleges that Plaintiff was discriminated against, it nowhere alleges he was discriminated against *because of his disability*. Rather, the Amended Complaint alleges vehemently and repeatedly that Plaintiff was discriminated against because of his race (Caucasian) and his prior settlement. *E.g.*, *id.* ¶¶ 29 ("[T]he Plaintiff had been reassigned to the PS and immediately began experiencing racist remarks directed toward him about his settlement, his pay grade '7', and being allowed to return to OPI by other inmates, and being white."), 38(b) (alleging "almost daily racist and degrading remarks"), ¶ 38(c) ("The harassment was based on the worker's protected status: Based on Race, the majority of racist remarks came from other black workers. . . . Add to that anger from the inmates about the Plaintiff's status of pay, longevity and other program benefits . . . ."). The harassment, moreover, came from other inmates. *Id.* ¶ 38(b) ("The names of the

inmates responsible for this harassment and threats are listed in the journal . . . .").  Although Plaintiff alleges throughout the Amended Complaint that Defendants knew about his disability but nonetheless permitted the other inmates to harass him and that the harassment caused him medical problems, he pleads no facts suggesting that Defendants permitted the harassment *because of* Plaintiff's *disability*.  To the contrary, Plaintiff specifically alleges that Roe incited inmates against Plaintiff out of a feeling of comradery with Dunn/because of Plaintiff's prior lawsuit.  Am. Compl. ¶ 46 ("It is also well-known that a 'Good Old Boy' network and attitude exists in jails and prisons between staff . . . ."); Aff., ECF No. 9-1 at PAGEID # 215 ("Roe said had you not won your lawsuit and it been for the atty general you wouldn't be here.").

Plaintiff has therefore failed to plead a disability discrimination claim under Title II of the ADA.

Plaintiff's objection suggests that he sought to raise in his original Complaint an ADA hostile work environment claim.  *E.g.*, Obj. ¶ 15, ECF No. 8. The Court generously assumes he also tries to assert such a claim in the Amended Complaint.

To the extent prisoners may assert hostile work environment claims under Title II of the ADA, *Ross v. Anthony*, No. 1:23-cv-527, 2023 WL 3944546, at *3 (W.D. Mich. June 12, 2023), Plaintiff's Amended Complaint fails to state such a claim for the same reason it fails to allege an intentional discrimination claim: the Amended Complaint does not allege that a hostile environment was created on

account of Plaintiff's *disability*. Rather, he continuously pleads that the hostile environment existed due to racism and the other inmates' jealousy over Plaintiff's pay grade. *See generally* Am. Compl., ECF No. 9.

But, on de novo review, the Court concludes that Plaintiff pleads a claim of ADA *retaliation*.[4] As noted above, Plaintiff's Amended Complaint adequately pleads that Roe incited—in retaliation for Plaintiff having previously sued other ODRC employees—other inmates to harass Plaintiff. That prior lawsuit, itself, involved claims of ADA failure to accommodate and ADA retaliation. *See generally* Am. Compl., ECF No. 51 (Case No. 2:20-cv-4838). Accordingly, Plaintiff essentially alleges that Roe incited Plaintiff's harassment in retaliation for Plaintiff having previously engaged in the protected activity of suing over alleged ADA violations. This states a claim for ADA retaliation. *Cf. Cook v. Warren Screw Prods., Inc.*, No. 24-1192, 2025 WL 933637, at *5 (6th Cir. Mar. 27, 2025) ("To establish a prima facie case of retaliation under the ADA, a plaintiff must show that she engaged in a protected activity, that her employer knew about it, and that the employer took adverse action against her because she engaged in the protected activity." (citation omitted)); *Guess v. St. Martinus Univ.*, No. 21-

---

[4] The Court also considered an ADA interference claim, but the facts alleged fit more closely with a claim of retaliation. In any event, the differences between an ADA retaliation claim and an ADA interference claim are unclear, and both require the same causation. *See e.g.*, *Canter v. Disability Network W. Mich.*, No. 22-1856, 2023 WL 5627318, at *3 n.1 (6th Cir. Aug. 31, 2023) ("Because Canter does not differentiate between retaliation and interference, much less rely on any such distinction to argue that an interference claim could succeed even where a retaliation claim might fail (or vice versa), we do not consider any potential differences between retaliation and interference under the ADA.").

1478, 2022 WL 1224555, at *4 (6th Cir. Apr. 26, 2022) ("He sufficiently pleaded that he engaged in a protected activity (the filing of a lawsuit) . . . ." (citation omitted)).

For largely the same reasons, the Court also construes the Amended Complaint as raising a First Amendment retaliation claim via 42 U.S.C. § 1983 against Roe in both his individual and official capacities.

But the Amended Complaint lacks any allegations against Arledge or Bierbaugh making plausible that they took any actions against Plaintiff because of his prior lawsuit. Accordingly, the Amended Complaint fails to allege either an ADA retaliation or a First Amendment retaliation claim against Arledge or Bierbaugh.

## IV. CONCLUSION

For the above reasons, Plaintiff may proceed on his § 1983 Eighth Amendment deliberate indifference claims against Roe, Arledge, and Bierbaugh, based on their alleged failure to protect Plaintiff from Strunk's attack. He may pursue those claims against Defendants in their individual capacities and against Arledge and Bierbaugh in their official capacities (for only declaratory and injunctive relief). Plaintiff may additionally proceed against Roe on his retaliation claims under § 1983 (First Amendment) and the ADA.[5]

---

[5] Whether Roe can be sued in his individual capacity on an ADA retaliation claim and whether sovereign immunity has been abrogated on an ADA retaliation claim can be fleshed out with further briefing. The Court reiterates, however, that Plaintiff does not sue any Defendant in their official capacities for damages. Am. Compl. ¶ 4, ECF No. 9.

The Amended Complaint either does not contain or the Court dismisses: ADA discrimination or hostile work environment claims, Title VII claims, Fourteenth Amendment Due Process claims, and any Eighth Amendment deliberate indifference claims based on the medical care Plaintiff received after Strunk's attack. Nor may Plaintiff seek injunctive relief against Roe. Plaintiff is also denied leave to litigate the remainder of this case *in forma pauperis*.

Although the R&R is directed toward the original Complaint, the Court **ADOPTS** the analyses and conclusions contained therein as applicable to the Amended Complaint, over Plaintiff's objection but only to the extent consistent with this Opinion and Order. The Clerk shall **TERMINATE** ECF Nos. 4 and 7.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT